Mr. Dowd. Good morning, Your Honors, and may it please the Court. Matthew Dowd for the Appellants. In this case, the District Court made only one error when it was led to believe that we presented a facial challenge to a PTO rule. What we presented is a challenge to a decision that we contend is ultra-virus, and that is beyond the authority of the PTO to make. Now, I'd like to first address the timeliness issue, and I'd also like to next address the reviewability issue, which the PTO challenges on appeal. The reviewability issue seems to me to be the harder issue. I think you've got a pretty good argument about the statute of limitations, but under aristocrat, this isn't a defense to a charge of infringement, and it would seem somewhat inconsistent to let someone bring a case like this under the APA separate from a defense to an APA. Judge, I have a few points on that. I think, if anything, aristocrat instructs us to bring an APA challenge. Our opponents don't cite a single case in which a court has upheld a decision where there is absolutely no reviewability of an agency decision when we contend, or the party contends, that the agency acted ultra-virus or beyond the authority of the agency. Now, there's a great quote from a DC Circuit case, Chamber of Commerce v. Rice, which I understand you're quite familiar with since you argue the case. It basically says that when an executive acts ultra-virus, courts are generally available to review that decision, and that's what we're contending here. Yeah, but there are cases, including this Supreme Court case in Blanc, I guess it is, that says that sometimes some parties are not able to challenge non-compliance with the statute if the statute as a whole indicates that they're not supposed to be able to do that, and I wonder whether maybe this isn't one of those statutes which forecloses the ability of an injured party to challenge a particular action, and what's the answer to that? I think the answer is at least two points. With respect to Blanc, I think you have to read Blanc, look at the facts of Blanc, and compare it to what happened in Stark v. Wickard, because both cases are dealing with the exact same statute, which is the Agricultural Marketing Agreement Act, which is a New Deal Act, and in Stark, the court held that there was review, and in that instance, it was brought by the producers or the handlers of milk, and in another key distinction between those cases is that in Blanc, the consumers were challenging, well two things, the consumers were challenging basically the merits of these milk orders, so they were trying to dispute the proprietary action with respect to whether the milk orders were the correct decision, and so they were getting into the area of agency expertise or agency discretion. When you look at what happened in Stark, there was really a challenge to the authority of the agency, the USDA, to make a decision under the governing statute. That's one distinction. The second distinction also noted in Blanc is that Blanc recognized that there was an alternative remedy or alternative avenue for a party to dispute the action that was being challenged in Blanc, and if you look at the details in Blanc, when that case was first filed, not only were consumers a plaintiff, there was also a milk handler that was a plaintiff. He was later dismissed because he did not exhaust his administrative remedies, and so there's a clear path for a party to challenge a particular decision, but more importantly, and this gets back to our case and the distinction in our case, we're not trying to challenge, like the party did in Preggis, the patentability issues 102, 103, 112. We're not trying to challenge the PTO's decision-making when it gets into the area of agency expertise or whether it gets into an issue of discretion by the PTO, and that happens in Syntex, for example. But now what we're trying to do and what we think we have good support for in Ethicon, for example, is we're basically saying that the agency here, the PTO, had no authority under Congress and the statutes to make the decision that it made, and that's exactly why this court in Ethicon permitted review of a third party in a re-examination, and there the party... Mr. Dodd, Congress has already dropped the unavoidable standard out of the statute, kind of sustaining the PTO's discretion. Why wouldn't we sustain their discretion as well? Chief Justice Rader, if anything, I think that speaks to the fact that it doesn't go to the agency discretion, right? Here, you've had to have Congress act to change the standard, right? And in fact, the recent change in law is in response to a patent law treaty. If anything, that reinforces the idea that the PTO was limited to the standards in 371D that Congress set forth, and only now... An indication that it's really just ministerial housekeeping and therefore, again, we defer to their discretion. Three points on that, Your Honor. In terms of just deferring to the discretion in interpreting the case. Second, is that my opponents have not cited a single case where a challenge based on ultra-virus conduct can be characterized as discretion on the part of the agency. And the third point really gets to the fact that this gets a separation of power issue, and there is no basis for the PTO to ignore the strict set forth in 371D. Can I ask you another question? You're familiar with Section 41 of the statute, I assume, right? I am, Judge Geisler. I look at 41C2, which is titled Effect of the Rights of Others, which deals with the effect of a late payment of a maintenance fee, and it spells out that if it's more than six months late, you have essentially intervening rights on the part of other people. And yet, there's no similar provision here with respect to the late payment of the fee in connection with this international application. What am I to make of that? Well, I think in Section 41, one, that gets to the merits of... I understand, but it's not just the merits, because it also tells us what Congress thought here, whether it was intending to give rights to third parties to challenge the revival where there's a late payment of fee. I mean, there's a specific provision in here dealing with another late payment provision, which seems to say, okay, sometimes you get intervening rights, sometimes you don't. There's no provision like that here with respect to these international applications. What am I supposed to make out of that? Well, I think the proper interpretation of that is you have to go back and go back to basic principles. What happens when a party abandons a patent application? That subject matter becomes part of the public domain. And Congress didn't speak to this specific issue with respect to the payment of fees and whether there's intervening rights, but what it did say, and what it did say, is that that party, that individual, that patent applicant, can only regain those rights if they satisfy the high standard in 371D. Now, absent that, that subject matter remains in the public domain, and I think that gets to another point as to why this decision is much more than a ministerial decision. I've got to say, I'm puzzled as to why Congress, and maybe the aristocrat was incorrectly decided, I don't know, but we're stuck with it. But why would Congress possibly want to create independent APA actions to challenge this revival decision instead of making it a defense to infringement? It just doesn't seem to make any sense, does it? So is your question why this should be an APA challenge versus a defense to infringement? Yeah, I mean, we've already held that you can't, you don't have a defense to an infringement action. It seems odd to say, oh, well, there's no defense to an infringement action. You can't even bring an APA action. I mean, that's just not the way things are done under the patent statute. It seems like an odd result. Well, again, I think generally, you're right. Most challenges to patent validity go through the standard patent infringement actions. But again, look at what happened in Ethicon. Ethicon was a clear APA challenge to the authority of the PTO to suspend or stay a re-examination. And also, in the bigger case, North County Community Alliance. Both of those cases, although they don't deal with patent rights, they deal with property rights. Are you drawing a distinction between an APA challenge to the authority of the agency and the correctness of the agency action? Well, it depends, Your Honor, on which action you're talking about. Now, if you're asking about the correctness of the PTO's decision with respect to patent rights, we are making that distinction. Because that, again, would draw us into... No, I'm talking about the correctness of this action. Of this action? So, if there were no question of authority, but only of correctness, are you saying that there would not be an APA opportunity? That it would have to wait for a defense to infringement in order to have standing, or whatever you want to call it? I'm not sure I'm following your question, Judge Newman, but if I understand... I'm trying to understand whether, in fact, the position facing us is whether, with the evolution of how the PTO operates in the patent system, that if there is an issue, any issue, with an issued patent, any person, stranger, not charged with infringement, could not bring a declaratory judgment action, for instance, can nevertheless go into the PTO and say, you got this wrong. Absolutely not, Judge Newman. And that ties in issues both with respect to reviewability and timeliness. But why not? Isn't that the trend, to have an opportunity within the PTO to clarify any flaw to remove patents that should be removed for whatever reason? Not for whatever reason. Congress, obviously, has modified the statute to allow third parties to challenge the substance or the merits of the patent application. But again, look at the distinction between ethicon and syntax. Well, let's talk about this case. Your position is that because they exceeded their authority, we've crossed that bridge, and that clearly can be subject to an APA action brought by someone who's otherwise a stranger to the patent and to the issue. With respect, no, Judge Newman, because we're not saying any stranger, any individual, anyone in the public can make this challenge. And that's part of the reason why we didn't bring this challenge. You haven't been charged with infringement, is that right? We have been charged with infringement. Our party has been charged with infringement, and that's part of the reason why we didn't file suit until 2011. So with respect to the timeliness issue under the statute of limitations, I think I agree with you in that we could not have filed our APA action any time before we were sued for infringement. Otherwise, we'd get into the concern about allowing any Tom, Dick, and Harry to challenge patent application for any particular reason. We're not advocating that at all. What we're saying, though, is a very similar situation, what you see in Big Lagoon, Rancheria, and North County Community Alliance, where an agency makes a decision with respect to a property right. The agency grants a particular property right to a party. Some years later, that party acts on the property right to the detriment of another party. In this case, it's Acela. We're harmed. We bring suit really the only way we can through an APA action because the availability as a defense to infringement has been foreclosed under aristocrat. And again, the key distinction in terms of reviewability, we're not asking this court to authorize or condone every challenge to every particular decision the PTO or any other agency makes, right? And we agree with these prior decisions such as Syntex, the other decision Magnavision, Judge Newman, which you authored. In those cases, the parties challenge whether a patent should be revoked because the examiner forgot to record a telephone interview, for example. That's an issue completely within discretion of the agency. It's completely not governed by a statute that sets a strict standard. And that's why our case is quite different than all the other cases. And it's also the reason why we, I think, fall within the reasoning and the analysis in Ethicon, where this court did allow a third party to challenge the authority of the PTO to stay a re-examination under, I think, Section 303. And in that... How would you state, is it possible to state some sort of right-line distinction as to what's subject to this sort of challenge? Or do we wait and see what happens? I think the court is quite capable of stating a distinction. And the distinction, and this is, you see this in D.C. Circuit cases, you see this in every circuit, where the distinction goes to whether if the authority as set forth by Congress versus whether the decision being challenged either is clearly within the discretion of the agency or it clearly gets to the merits of an agency decision which Congress intended to be limited with respect to challenges. And that gets back to the point you had earlier with respect to Block. There, the Supreme Court made that distinction and said that consumers weren't in a position. But even there, there was the availability to challenge those decisions because milk handlers had the ability to go through an administrative process and challenge that. I believe I'm into my rebuttal time. I think you've used it, Mr. Dowd, but we'll restore your rebuttal time and give Mr. Bargan an extra three minutes if he needs to use it. Thank you. Just a second. We need to get the extra three minutes here. Thank you. You may proceed. Good morning, Mr. Chief Judge. And may it please the Court. Dennis Bargan, Assistant United States Attorney, on behalf of the Patent Office. This Court should affirm the District Court's decision... You agree, as I understand it, that if this case came up in a posture where the Patent Office had denied revival, that the patent applicant could bring an ATA action to challenge that, correct? That is absolutely correct. Why should there be a distinction between the two, between the patent applicant who can challenge the revival action but the accused infringer cannot? Well, for several reasons, Judge. As you articulated in your colloquy with my opponent this morning, that is exactly the analysis that the Supreme Court mandated in Block, that there are certain instances in certain statutory schemes in which Congress has made its intent that only certain individuals and certain entities, faced with certain circumstances, are able to challenge agency action through the APA in a federal district court. And in fact, if you look at Block and its analytical framework, as it applied to the Milk Act at issue there, it is almost on all fours with the Patent Act's treatment of third-party infringers facing putative infringement liability. How do you know where to draw the line when you say there are certain instances? Let's say, for example, that this person is involved in infringement action and therefore has a direct compelling interest in this particular issue. You still say that this is not one of those certain instances? Indeed, Your Honor, for two reasons. Number one, just as was the case with respect to milk consumers in the Milk Act at issue in Block, there is absolutely no provision of the Patent Act that provides individuals facing infringement liability to come to the Patent Office and ask for review of a revival decision. But they can ask for review of a decision of the merits? That is correct. Why should there be a difference if, in fact, the outcome could very well be substantively dispositive of the infringement action? Because, Judge Newman, the touchstone of the analysis is Congress's intent. And in the instances in which you just articulated, where the substantive merits of the patent, as this Court held in Aristocrat, the meets and bounds of the intellectual property, Congress has specifically, expressly, and explicitly provided for both administrative and judicial review mechanisms for the USPTO's decisions in that regard. And in particular, I'm addressing ex parte re-examination, inter partes review, and post-grant review, the latter of which are found in the new AIA. Moreover, when Congress spoke with respect to the interests of and the methods by which a putative infringer, such as Acela, could ameliorate or defend against that infringement liability, it did so very clearly in 35 U.S.C. Section 282. And in Aristocrat, this Court reviewed Congress's intent not only in Section 282, but in the entire Patent Act. But Mr. Barga, if Acela can't challenge in this APA setting, then do they have any remedy? They don't on this issue. But Congress did provide. Doesn't that suggest that APA is the place to do that sort of thing when there's no other legal remedy? To the contrary, Mr. Chief Judge, the opposite, I believe, is the answer. When Congress provides a specific statutory scheme and a specific remedy, as it did in Section 282, its omission of the issue that comes before the Court in this case is telling evidence of its intent. Indeed, all that the Supreme Court required in Block was that the Congressional intent be fairly discernible in the statute. And here I would submit, because it was omitted in Section 282, it is almost blatantly obvious. But kind of hitting this same point from a slightly different direction, in Pregis we said, okay, APA is improper because there is another avenue. We don't have another avenue here, as you tell us. Doesn't that send us back to the APA? It doesn't, Your Honor, when there are other indicia of Congressional intent other than the provision of certain other remedies. There are two different provisions of the APA that were at issue in Pregis. One is the one that's before the Court here, which is Section 701A1, which is where Congress precludes judicial review by statute. The other, which is where Your Honor's question was directed, is when there are other alternative remedies provided. At certain times, those dovetail well together. The provision of certain remedies and the omission of others are telling evidence of the preclusion of judicial review. But if you follow that line of reasoning and you look at Section 41 of the statute, 41C2, which Congress steps in and says, well, the late payment of a maintenance fee isn't going to affect the patentee's rights under certain defined circumstances. So doesn't that suggest that where Congress wanted to protect the patentee from the consequences of late payment of a fee, that it stepped in and it said, we're going to protect you. And that's exactly what they do in Section 41. But there's no similar protection here for the patentee with respect to the late payment of this filing fee under 371. I would say two different things to that, Your Honor. First and foremost, I think there's a difference between an intervening rights provision, such as Section 41 articulates here, and the provision of certain types and certain avenues of judicial review. It is the latter that is primarily at issue in a preclusion analysis as articulated by Block. And here, where you have Congress providing third parties with certain both administrative and judicial avenues for review of USPTO action, but only in certain circumstances, with substantive patentability. And you have a specific statutory provision, such as Section 282, in which Congress specifically delineated the remedies that would be afforded a putative infringer in attempting to defeat infringement liability. Those two together make it fairly obvious, or fairly discernible at the very least, that Congress did not want to provide for judicial review under the APA. Indeed, allowing such judicial review would render this court's decision in Aristocrat essentially a dead letter. Because the very same rationale that animated Aristocrat, a concern that individuals that were facing infringement liability would comb through the file wrapper to find any procedural inequity, any procedural error, and then rush to court, would occur in the scheme that Othello wants this court to authorize. They're not rushing to court. It's like they're rushing to the patent office to say you made a mistake. To the contrary, Judge Newman, they're rushing to the court. They're rushing to use the APA in federal district court. Instead of asserting it as a defense under Section 282, which this court said it could not in Aristocrat, instead it starts a new civil action with a new defendant in a new caption, and potentially in a new court. So instead of raising it in the exact piece of litigation where they are facing infringement liability, they are adding litigation. Your position in some ways is kind of unattractive because what you're saying is the PTO can act unlawfully and nobody can do anything about it. Nobody can challenge it, right? Only in these circumstances, Your Honor, and that is exactly My statement's correct. Your statement is correct. Nobody can challenge it. They can act unlawfully and no one can challenge it. In the circumstances that Acela faces, I think your first question to me, Judge Dike, was could an applicant whose revival petition were denied, could they come to court under the APA? The answer is yes. So I wouldn't say that no one could do that. No one, if they allow the revival, can challenge it. If they act unlawfully in allowing the revival, no one can challenge it. That's what you're saying. That is exactly correct. And that is essentially the same circumstances that confronted the court in Block, that if the Secretary of Agriculture in regulating milk prices, regulated those prices in a way that a consumer felt was unlawful, although the handlers and producers that did have access to judicial review. Somebody in those circumstances could challenge it. That's correct. And the same here, that in the event that the patent office were to deny a revival petition, that entity could challenge in federal district court under the APA. You could make a pretty good case here that the PTO ignored the statute, or maybe flaunted it. And you're arguing that that is without remedy. I think it probably would come as no surprise that I disagree with the court's assessment of the merits. That said, it is. Nothing on the record says it's unavoidable. And Your Honor, from the very dawn of the republic on to today, the Supreme Court has held in repeated instances that where the court's jurisdiction is at issue, the merits of the underlying cause of action are simply not relevant. But we have to assume that the action was unlawful here for present purposes. That's correct. And what you're saying is, who cares? Nobody can challenge it. Again, nobody in Osella's circumstances. Not a third party dictative infringer. Yes, Your Honor. What about Ethicon? As I recall Ethicon, Your Honor, it comes to the court in a re-examination context. And those are the instances in which this court and Congress, more specifically, has allowed third parties to have a certain entree into both the administrative and judicial review functions that attend the patent office. And so that only serves to highlight the argument we're making here, which is where Congress wanted third parties the ability to seek either administrative or judicial review under the APA. It did so, and did so explicitly. Does your argument require us to see the PTO's action as mere housekeeping, ministerial, nitpicking here? It does not. It does not. That is essentially what this court delineated, this very argument in aristocrat. It called it procedural, I believe, minutia, or something akin to that. I don't want to quote out of context. But it does not require this court to do so. All that is relevant is that this court held in aristocrat that Section 282, the provision that Congress provided for individuals in my colleague's position to ameliorate patent infringement liability. And it omitted this specific argument. Do you have an example of a Supreme Court case where the Supreme Court said no one has the ability to challenge unlawful agency action? I cannot think of one off the top of my head, Your Honor. But what I can say is that the Supreme Court has repeatedly held that the presumption in favor of some judicial review is just that, a presumption, and that it can be overcome by other indicia of congressional intent, whether it be expressed statutory language or other means of divining the congressional intent through other statutes. I see that my time has expired. I thank the court for its time this morning. Thank you, Mr. Bargan. Mr. Bress, you have six minutes. Thank you, Chief Justice. And may it please the court, we would submit that the issues that the court has been discussing are not new to this court. While the factual circumstances were slightly different, this court addressed the very questions that we've been discussing here this morning in Pregis. The court discussed how, first of all, noted that 701 and 704 are two different reasons why review under the APA might not be available. And then it walked through, in great detail, an analysis of how to apply block to a claim by an alleged infringer seeking to challenge the issuance of a patent under the APA. It held independently of 704 that 701 precludes APA review by an alleged infringer of the issuance of a patent. It did so for good reason, and some of the reasons that Judge Dyke noted at the very outset of this argument, which is it looked at the comprehensive scheme that Congress has established for review. But, of course, it was different in the sense that the obviousness issue, which they sought to raise as an APA challenge, is a defense which could be litigated in the course of the infringement action, which is exactly what the court said. Judge Dyke, there were two different defenses being raised, as you know, I'm sure, in Pregis. Yeah, I understand. And one of them was obviously obviousness of del non, in other words, whether it was correct or incorrect, the decision that was obvious. The second was a pure, classic APA, arbitrary and capricious type argument, challenging the bases on which the examiner had held that the patent was non-obvious. That's not something, as this court noted, that can be raised in defense of an infringement suit under 282. The court noted that, and it said, nonetheless, even if it can't be raised in that context, you can't raise it here under the APA. And significantly, it held that under 701. Now, it went on, of course, because there were alternative bases for affirmance there to also hold that there were other remedies. But one thing that's important to note, where it looks at 704 as an alternative basis, is it responds to the argument that there may be some defenses that you can't raise, like arbitrary and capricious reasons for granting a patent. So the patent office can act unlawfully and nobody can challenge it. Your Honor. That's the problem. It just seems unusual, shall we say. Your Honor, first of all, I would. Did they even need to change the statute? I'm sorry, Your Honor. Did they even need to change the statute? Your Honor, we would say they didn't need to do anything. Because regardless of what you would think of the rule that's at issue here, ab initio, Congress has amended the statute about 10 times since 1984, when the statute that provides unavoidable came into place. And it hasn't touched that. So I think there is a good ratification argument. But let me put that to the side and perhaps address your question, Judge Dyke. Number one, I do believe that 701 operates independently of 704. I mean, it says so. It says that the chapter doesn't even apply. No, but I'm not sure that the first issue in Priebus isn't also affected by the fact that there was another remedy. In other words, it could affect whether you look at the statute and you conclude that it entirely forecloses judicial review of this issue. Your Honor, one could certainly think about that when thinking about whether Congress meant to foreclose review. And I understand that. But the great weight of the argument against it, as laid out, I think, quite well in Priebus, I think shuts the door on it. Are you aware of any Supreme Court case or case in our court which has held that unlawful agency action is immune to review by anybody? I don't think the courts have. They may have decided a preclusion issue, Your Honor, in certain senses where that is true. But whether they've actually faced up to that and gotten to the result, I don't know. But here, I don't think that that's necessarily true anyways. Why? Because when this rule was put into place, and certainly after the 1984 statute came into place that provided the words unavoidable, someone withstanding, and again, you'd have to look to see what party would have had it, could have challenged the rule on its face at that time in, again, a classic APA action. It wouldn't have been challenging. That's the timing issue. To put the timing issue to one side, what you're No, no, I'm not arguing the timing issue, Your Honor. Please. I'm just saying that the rule can be challenged on its face. Here, what is being challenged prospectively, like any other rule. Here, what is being challenged is not the rule in a prospective sense. What is being challenged, as my friends have Is what you're saying, they would have had an APA action if they brought it immediately after the rule had been adopted? I think if they had had standing, Your Honor, which is obviously a separate question, but someone withstanding could have challenged the rule. Well, that seems to be a concession that the statute doesn't criminalize the action from judicial review. No, Your Honor, I don't believe so. I think that in the one case, we're talking about challenging an issued patent. Going around, essentially, there's a 282 process for how you do it. There's all sorts of other ways to do it in court. You can do a DJ action. You can argue it in defense. It's as to an issued patent itself, you can't simply elide the fact that you've got no ability to state a defense in court and instead presume that the Congress that prohibited that defense, that precluded that defense, nonetheless intended that you be able to file an entirely new and independent action before the agency. If you could do that, not only, as my friend has argued, would aristocrat be a dead letter, but it would actually be worse than that. It would make less sense than that, because you wouldn't be able to make the same defense in the actual litigation that's going on. No, we're going to multiply litigation and drag PTO into it by having a separate suit against PTO that itself challenges the issuance of the very same statute that aristocrat said you can't challenge directly. I do believe that that's different from being able to challenge directly. Your final thoughts, Mr. Bress? The red light's on. Any final thoughts? I'm sorry, Chief Justice. No, that was my final thought. Thank you. Thank you very much. Mr. Dowd, you have three minutes. Thank you, Your Honors. I think that PTO's argument here is extraordinary, and I'll submit it's unprecedented, because I know of no case, either the Supreme Court or this Court, that stands for the proposition that an agency action, assuming that it is ultra vires, can go unchecked, is without any remedy to review that action. In fact, if you look at the Supreme Court case law that deals with this, and other circuit case laws that deals with this, when an agency acts ultra vires, the default conclusion is that that decision is null and void. That goes back to a 1917 Supreme Court case, Utah Power and Lighting, and it continues on. And the default is that when that agency action is without authority from Congress, it's as if it never happened. And that's why, under the APA, there is this strong presumption of reviewability. Congress here, in this statute, has not precluded review of this particular issue. There is really no ability for any individual, any party, whether they have standing or not, to challenge the agency's action here, but for the APA route. Now we, I think to answer Judge Dykes' earlier question to my colleague, we would have preferred to bring this as a defense to infringement. We think that's a strong, it could have been a strong argument, but that route is now foreclosed under Aristocrat, and there's no basis to foreclose that possible remedy under the APA. Well, this is, I think, a significant concept, but if you aren't going to draw a line of some sort of standing, some sort of interest, then you encounter those Supreme Court cases which talk about intermediaries and those who make a living out of deciding how to challenge what the government has done wrong. And you get to the point where the diversion of agency resources and all else really takes us beyond what would be a reasonable view of APA authority in relation to the public. Judge Newman, I think that's a fair concern with respect to the intermediaries, and I don't want to encourage that type of activity. The PTO has enough to do, but here there's no question that Excella has been harmed. There's no question that, according to the complaint, the PTO's action was unauthorized. And so this is not a case that will encourage additional collateral attacks on the minutiae or the procedural irregularities. This is attacking the authority of the PTO to revive an application to take subject matter that was abandoned and then put into the public domain and then extract that from the public domain in a manner that Congress did not permit. So your comment that standing is irrelevant, or would you say that standing is achieved by someone who is already in court somewhere on this overriding patent? Yes, Your Honor. I think standing is a requirement to challenge it. That's why we didn't challenge it earlier, before 2011. PTO doesn't challenge or dispute the standing issue here. And I think it is a requirement to bring this. And it gets into the timing issue because that's why, if you look at Big Lagoon, if you look at North County, that's why the subsequent infringement action really is the trigger for the statute of limitations. Unless there are any further questions? Thank you, Mr. Dowd. That concludes the morning. All rise. The court is adjourned until tomorrow morning at 10 o'clock a.m.